UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK ALLEN BATTERSBY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IVRA LIEH, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-06561-EMC<br><br>**ORDER OF SERVICE**<br><br>Docket Nos. 1, 5 |

## I.　INTRODUCTION

Erick Battersby, currently an inmate at the Deuel Vocational Institution in Tracy, California, filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about events and omissions at a jail at which he earlier was housed. His complaint is now before the Court for review under 28 U.S.C. § 1915. This order directs service on all but one Defendant and denies a motion for appointment of counsel.

## II.　BACKGROUND

Mr. Battersby complains that, while housed in the Humboldt County Correctional Facility during the time period from about October 2017 through about December 2019, he developed Raynaud's syndrome, a condition that caused him to need extra blankets to keep warm. He complains that various members of the jail's medical and custodial staff interfered with his use of extra blankets, with the issues being that he was not allowed an extra medical blanket and that he was disciplined for violating the jail captain's dress-and-bed rule when he stayed under blankets during the day. Mr. Battersby eventually was allowed to have an extra medical blanket and to be under blankets during the day.

The complaint alleges the following:

Mr. Battersby put in a sick-call slip on October 13, 2017 (and another before January 3, 2018, when he was not seen for the first one) for care for a rash and dull pain in his feet. He was seen by nurse Iver on January 3, 2018, who said that Battersby's feet were fine and the rash "had something to do with circulation but was nothing." Docket No. 1 at 9.

Mr. Battersby put in another sick-call slip on August 6, 2019, stating the "skin disorder" on his feet was "substantially worse." *Id.* Nurse Iver saw him three days later, and said it was probably nothing but that he (Iver) would put in a referral to see the doctor. Mr. Battersby reminded nurse Iver that his feet were still hurting on September 11, and submitted a sick-call slip on September 30 because he still had not seen the doctor.

Dr. Ziegler saw Mr. Battersby on October 2, 2019; he thought Battersby had Raynaud's syndrome, ordered blood work to see if there were other problems, and ordered an extra blanket to provide warmth when Mr. Battersby had Raynaud's episodes. *Id.* at 10.

At an October 18, 2019 visit, Dr. Ziegler confirmed that the problem was Raynaud's syndrome, and said that Mr. Battersby could use the extra blanket when an episode occurred. Nurse Iver heard that and said that Mr. Battersby could not use an extra blanket during the day but could have an extra sweatshirt. Mr. Battersby complained to the doctor that he needed to keep his whole body warm. Dr. Ziegler told Mr. Battersby that Ziegler would talk to "these guys," apparently referring to custody staff, to try to solve the problem. Docket No. 1 at 11.

At a November 6, 2019 visit, Mr. Battersby told Dr. Ziegler he had not received his extra blanket but was using a prayer blanket for warmth.

Correctional staff wrote up Mr. Battersby for being under his blankets during November 6-22, 2019. (Writing up an inmate appears to mean taking some sort of adverse or disciplinary action against him.) On November 22, 2019, Corporal Jackson said that Mr. Battersby did not have a medical exemption for being under blankets or to have an extra blanket. Mr. Battersby told Corporal Jackson he needed to use his medically ordered extra blanket during the day for warmth. Corporal Jackson wrote up Mr. Battersby for violating Captain Christian's bed-and-dress rule and Mr. Battersby filed grievances. *Id.* at 11, 14.

2

1   On November 23, 2019, Mr. Battersby was locked down and not given tier time because he was under his blankets. He wrote a grievance on Corporal Twitchel for locking him down and ignoring his medical needs. *Id.* at 12.

On November 23 or 24, 2019, C.O. Coleman wrote up Mr. Battersby, shortened his tier time, and gave him a less desirable tier time for being under blankets during the day. *Id.* at 12. Mr. Battersby received an extra blanket on November 24, 2019. *Id.* at 15. An attachment to the complaint states that, on November 24, 2019, Corporal Freese responded to a grievance by informing Mr. Battersby to turn in a sick-call slip to have his issue resolved, but that the bed-and-dress rule would not be changed. *Id.* at 6.

On November 25, 2019, nurse Iver said he could not do anything about the blanket situation because the facility staff made the rules about blankets, and wrote a referral for Mr. Battersby to see Dr. Ziegler to talk about the situation.

On November 27, 2019, nurse administrator Karen Edmundson talked to a sergeant "and a clear order . . . was given" to allow Mr. Battersby to be under the blankets. *Id.* at 12. The next day, Corporal Keele responded to a grievance and said Mr. Battersby could stay under the blankets 24 hours a day. *Id.* at 15.

On December 12, 2019, Mr. Battersby reviewed his medical records and saw that they had been altered. Officials refused to give him a copy of the records without a court order. *Id.* at 12.

On December 16, 2019, Mr. Battersby was transferred to the California Department of Corrections and Rehabilitation. There, he was prescribed a beta-blocker that greatly improved his life. *Id.* at 13.

The prayer for relief requests monetary damages and an injunction to end the bed-and-dress policy at the jail.

### III.   DISCUSSION

A.   <u>Review of Complaint</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any

3

claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment or the Fourteenth Amendment. Which of those amendments applies to an inmate's claim depends on whether he was a convicted prisoner or was a pretrial detainee at the relevant time: a prisoner's claim arises under the Eighth Amendment's Cruel and Unusual Punishments Clause while a pretrial detainee's claim arises under the Fourteenth Amendment's Due Process Clause. The two amendments have different standards.

Deliberate indifference to a *prisoner's* health or safety needs may violate the Eighth Amendment. A defendant violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A defendant is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Id.* at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If the defendant should have been aware of the risk, but was not, then he has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Negligence does not violate the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004).

A *pretrial detainee's* claim arises under the Fourteenth Amendment's Due Process Clause and is governed by an *objective* deliberate-indifference standard rather than the subjective one that

4

applies to a prisoner's claim.

> [T]he elements of a pretrial detainee's [safety or] medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). For the third element, the defendant's conduct must be objectively unreasonable, "a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Id.* (alteration in original) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). "[T]he plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071).

Liberally construed, the complaint states a cognizable claim against the following defendants for deliberate indifference to Mr. Battersby's medical needs. A cognizable claim is stated against nurse Iver Lien, who allegedly did not treat Mr. Battersby's condition adequately in 2017-2018, delayed in sending Mr. Battersby to a doctor, and acceded in 2009 to a correctional staff rule that was contrary to the inmate's medical need (i.e., the rule that did not allow extra blankets for daytime use). A cognizable claim is stated against Dr. Ziegler, who allegedly failed to take the steps necessary to ensure that Mr. Battersby (a) received the extra blanket and (b) would be permitted to use blankets for warmth during Raynaud's episodes, despite Mr. Battersby alerting Dr. Ziegler to the fact that he was having problems getting and using blankets. *See Jett v. Penner,* 439 F.3d 1091, 1097 (9th Cir. 2006) (doctor's failure to provide treatment for administrative reasons would be sufficient to show a genuine issue of material fact as to deliberate indifference). A cognizable claim is stated against Corporal Jackson, Corporal Twitchel, Corporal Freese, and C.O. Coleman, who allegedly took disciplinary measures against Mr. Battersby rather than allow him (a) to use his medically ordered extra blanket and (b) to be under blankets during the day to address his Raynaud's episodes. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th

1   Cir. 1999) (allegation that correctional officer ignored the instructions of a treating physician to
2   provide medication to prisoner is sufficient to state a claim for deliberate indifference).  A
3   cognizable claim is stated against Captain Christian, who allegedly made the bed-and-dress rule
4   that precluded Mr. Battersby from being under blankets during the day that were needed to address
5   his Raynaud's episodes.

6   Although Mr. Battersby does not allege whether he was a pretrial detainee or a convict at
7   the relevant time, the allegations of the complaint are adequate to state a cognizable claim,
8   regardless of whether the Eighth Amendment or Fourteenth Amendment standard for deliberate
9   indifference is used.  The parties should, of course, determine what his status was at the relevant
10  time so that, when it is time to adjudicate his claims, the proper standard is used.  If Mr. Battersby
11  was a pretrial detainee for some of the time and a prisoner for a later part of the time, the parties
12  should state the date on which he was convicted and then apply the Fourteenth Amendment to the
13  pre-conviction part of his claim and the Eighth Amendment standard to the post-conviction part of
14  his claim.

15  A claim is not stated against nurse administrator Karen Edmundson.  She allegedly talked
16  to a sergeant about the situation on November 27, 2019.  The result of that conversation was that
17  "a clear order" was given to allow Mr. Battersby to be under the blankets.  Docket No. 1 at 12.
18  The allegations indicate that nurse Edmundson's only involvement helped to solve the impasse
19  between medical and custodial staff, and did not respond with deliberate indifference to the
20  impasse.

21  Mr. Battersby requests an injunction against the bed-and-dress rule at the jail as well as
22  damages.  When an inmate is released from jail or prison or transferred to another facility and
23  there is no reasonable expectation nor demonstrated probability that he will again be subjected to
24  the conditions from which he seeks injunctive relief, the claims for injunctive should be dismissed
25  as moot.  *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995).  Having been sent to prison to
26  serve his sentence, there is no reasonable expectation or demonstrated probability that Mr.
27  Battersby will again spend time in the Humboldt County Correctional Facility where the
28  challenged rule exists.  Although he urges that he wants an injunction to benefit other inmates, Mr.

1 Battersby has no authority to assert claims on behalf of other inmates. *See Russell v. United*
2 *States*, 308 F.2d 78, 79 (9th Cir. 1962) ("a litigant appearing in propria persona has no authority to
3 represent anyone other than himself"). Therefore, the request for an injunction is dismissed
4 because that issue became moot upon Mr. Battersby's transfer to the state prison system. Only the
5 claims for damages may be pursued.

6 B. Motion for Appointment of Counsel

7 Mr. Battersby has filed a motion for appointment of counsel to represent him in this action.
A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an
indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328,
1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits
and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal
issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together
before deciding on a request for counsel under § 1915(e)(1). Exceptional circumstances are not
present in this action. There appears to be some likelihood of success on the merits, but Mr.
Battersby definitely has been able to articulate his claims *pro se* and those claims are not at all
complex. His request for appointment of counsel to represent him in this action therefore is
**DENIED**. Docket No. 5.

## IV. CONCLUSION

1. The complaint, liberally construed, states a cognizable claim against Nurse Iver Lien, Dr. Daniel Ziegler, Captain Christian, Corporal Jackson, Corporal Twitchel, Corporal Freese, and C.O. Coleman under the Eighth Amendment and/or Fourteenth Amendment for deliberate indifference to medical needs. All other claims and defendants are dismissed.

2. The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint, and a copy of all the documents in the case file upon the following defendants, all of whom apparently work at the Humboldt County Correctional Facility at 826 Fourth Street, Eureka, CA 95501:

- Nurse Iver Lien
- Dr. Daniel Ziegler
- Captain Christian

- Corporal Jackson
- Corporal Twitchel
- Corporal Freese
- C.O. Coleman

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **April 9, 2021,** Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **May 21, 2021**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. If Defendants wish to file a reply brief, the reply brief must be filed and served no later than **June 11, 2021**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is

granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendants file a motion for summary judgment for failure to exhaust administrative remedies, it is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

5. All communications by Plaintiff with the Court must be served on Defendant's counsel by mailing a true copy of the document to Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

9. Plaintiff's motion for appointment of counsel is **DENIED**. Docket No. 5.

**IT IS SO ORDERED**.

Dated: February 17, 2021

_____
EDWARD M. CHEN
United States District Judge