1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    ERICK ALLEN BATTERSBY,                    Case No. 20-cv-06561-EMC

8             Plaintiff,                       **ORDER GRANTING PLAINTIFF'S
                                               MOTION TO AMEND; SCREENING
9        v.                                    SECOND AMENDED COMPLAINT;
                                               AND ADDRESSING PLAINTIFF'S
10   IVRA LIEH, et al.,                        DISCOVERY-RELATED MOTIONS**

11            Defendants.                      Docket Nos. 65-66, 72-74, 78

12

13

14                          **I.      INTRODUCTION**

15        Erick Battersby, currently an inmate at Pelican Bay State Prison in Crescent City,

16   California, filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about events

17   and omissions at a jail at which he earlier was housed.  Docket No. 1.  The Court screened the

18   initial complaint pursuant to 28 U.S.C. § 1915 and § 1915A, dismissed Defendant Nurse

19   Edmundson from the action, and ordered all other Defendants to respond to Mr. Battersby's

20   claims.  Docket No. 8.  Mr. Battersby subsequently filed an amended complaint ("FAC"), which

21   included new allegations against Nurse Edmondson.  Docket No. 31.  The Court screened the

22   FAC, and ordered Nurse Edmondson to respond to Mr. Battersby's claims.  Docket No. 62.

23        Mr. Battersby now moves for leave to file a second amended complaint ("SAC"),

24   explaining that he intended to file it in place of the FAC.  Docket No. 66.  He also moves for an

25   order screening the  SAC.  Docket No. 65.  Mr. Battersby also has filed multiple motions related

26   to discovery.  Docket Nos. 72-74. 78.

27        Before trial, courts are encouraged to "freely give leave" to amend.  *See* Fed. R. Civ. P.

28   15(a)(2).  Defendants have not yet filed a dispositive motion against the FAC, and appear unlikely

United States District Court
Northern District of California

1       to be prejudiced by its amendment. *See generally*, Docket. Accordingly, the Court **GRANTS** Mr.

2       Battersby's motion to file an SAC, and screens the SAC below.[1]

3               Mr. Battersby's discovery-related motions will be addressed below.

4                                       **II.     BACKGROUND**

5               Mr. Battersby currently is imprisoned at Pelican Bay State Prison. *See* SAC at 1. Before

6       his conviction, he was detained at Humboldt County Correctional Facility ("HCCF"), from about

7       October 2017 through about December 2019. *See generally, id*.

8               Mr. Battersby complains that, while housed at HCCF, he developed Raynaud's syndrome.

9       He explains that Raynaud's syndrome is an intense "overreaction to cold," and can result in "tissue

10      loss and frostbite." SAC, Ex. A at 1. Because of this condition, Mr. Battersby needs extra

11      blankets to keep warm. *See id*. He complains that various members of the jail's medical and

12      custodial staff interfered with his use of extra blankets, specifically not allowing him to have an

13      extra medical blanket and disciplining him for violating the jail captain's Bed-and-Dress rule

14      when he stayed under blankets during the day. *See id*. Mr. Battersby eventually was allowed to

15      have an extra medical blanket and to be under blankets during the day.

16              Mr. Battersby names the following Defendants: Nurse Iver Lien, Nurse Edmondson,

17      Doctor Ziegler, and Does 1-4 ("Medical Defendants"); and Captain Christian, Corporal Jackson,

18      Corporal Twitchel, Corporal Freese, and Correctional Officer Coleman ("Correctional Defendants").

19      SAC at 2. All Defendants are employed at the Humboldt County Correctional Facility. *See id*.

20              The SAC alleges the following:

21              Mr. Battersby put in a sick-call slip on October 13, 2017 (and another before January 3,

22      2018, when he was not seen for the first one) for care for a "rash and dull pain in [his] feet like

23      [his] feet were stuck in a bucket of ice." SAC, Attachment B at 8. He was seen by Nurse Iver[2] on

24      January 3, 2018. *See id*. Mr. Battersby informed Nurse Iver that his feet "hurt." *Id*. Nurse Iver

25

26      [1] Although the Court grants Mr. Battersby's motion to amend his pleading, the Court cautions Mr.
        Battersby that repeated amendments delay the progress of this case.

27      [2] The Court means no disrespect by referring to Nurse Lien by his first name, when all other
28      Defendants are referred to by their last names. Rather, Mr. Battersby used Nurse Lien's first name
        throughout the SAC, and this order follows the convention used by Mr. Battersby.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    said that Mr. Battersby's feet were fine, and the rash had something to do with circulation. *See id*.

2           Mr. Battersby put in another sick-call slip on August 6, 2019, stating the "issue with [his]

3    feet [was] getting worse." *Id.* Nurse Iver saw him three days later, and said it was probably

4    nothing but that he (Iver) would put in a referral to see the doctor. *See id*. Mr. Battersby reminded

5    Nurse Iver that his feet were still hurting on September 1, and submitted a sick-call slip on

6    September 30 because he still had not seen the doctor. *See id*.

7           Dr. Ziegler saw Mr. Battersby on October 2, 2019. *See id*. at 8-9. Dr. Ziegler's

8    preliminary assessment was that Mr. Battersby had Raynaud's syndrome. *See id*. at 9. Dr. Ziegler

9    ordered blood work to confirm his preliminary assessment. *See id*.

10          Sometime between October 2 and October 18, 2019, Mr. Battersby asked Dr. Ziegler for

11   an order that Mr. Battersby be allowed an extra blanket. *See id*. at 15. Dr. Ziegler "verbally

12   requested" that Does 1-4 generate such an order, and Does 1-4 "did so by conveying" Dr.

13   Ziegler's request to Nurse Edmondson. *Id*. The order should have been completed by Nurse

14   Edmondson, but was not. *See id*.

15          On October 18, 2019, Mr. Battersby had a follow-up appointment with Dr. Ziegler. *See id*.

16   at 9. Dr. Ziegler confirmed in that appointment that the problem was Raynaud's syndrome.[3] *See*

17   *id*. Mr. Battersby and Dr. Ziegler "discussed how [Mr. Battersby] would need to use an extra

18   blanket to combat a[] [Raynaud's] episode whenever it might occur." *Id*. Nurse Iver overheard

19   the discussion, and said that Mr. Battersby could not use an extra blanket during the day but could

20   have an extra sweatshirt. *See id*. Dr. Ziegler stated that, when an episode struck, Mr. Battersby

21   would need to be able to keep his entire body warm because a Raynaud's episode can result in

22   "tissue loss or mild frostbite." *See id*. Dr. Ziegler said "he'd talk to custody and hopefully come

23   to some kind of solution." *Id*. Dr. Ziegler asked Does 1 and 2 to generate an order for an extra

24

25   [3] For context only, the Court notes that Raynaud's disease is "a vascular disorder that is marked by
     recurrent spasm of the capillaries and especially those of the fingers and toes upon exposure to
26   cold, that is characterized by pallor, cyanosis, and redness in succession usually accompanied by
     pain, and that in severe cases progresses to local gangrene." *See* Raynaud's disease, *Merriam-*
27   *Webster.com Medical Dictionary*, Derriam-Webster, https://www.merriam-webster.com/
     medical/Raynaud%27s%20disease (last visited Dec. 30, 2021). *See also Cox v. Allin Corp. Plan*,
28   70 F. Supp. 3d 1040, 1044 n.2 (N.D. Cal. 2014) ("The Court may take judicial notice of medical
     dictionary definitions.") (citation omitted).

1    blanket, and they "conveyed the order request to [Nurse] Edmondson who failed to ensure

2    communication of the order to non-medical custody staff." *Id.* at 15.

3          On October 21, 2019, "Dr. Ziegler made a medical treatment order for an extra blanket to

4    combat a Raynaud's episode." *Id.* at 10. He left this order "in Karen's box." *Id.* Mr. Battersby

5    alleges that "Nurse Karen Edmondson failed to act on this information for . . . over 30 days." *Id.*

6    at 10, 15. Mr. Battersby argues that Dr. Ziegler should not have relied on Nurse Edmondson to

7    pass along his treatment order. *See id.* at 15-16.

8          At a November 6, 2019 or November 11, 2019 visit, Mr. Battersby told Dr. Ziegler he had

9    not received his extra blanket but was using a prayer blanket for warmth. *See* SAC, Battersby

10   Decl. at 2 (stating this occurred on November 11), SAC at 15-16 (stating this occurred on

11   November 6). Dr. Ziegler wrote a confusing order for Mr. Battersby always to be allowed his

12   blanket. *See id.* at 16. Does 1-4 conveyed this order to Nurse Edmondson, and Dr. Ziegler relied

13   on Nurse Edmondson to convey this order to custodial staff, but she did not. *See id.*

14         Between October 21, 2019 and November 22, 2019, Mr. Battersby made multiple requests

15   to Correctional Defendants for an extra blanket, none of which were granted. *See id.* at 10, 13.

16   Between October 2, 2019 (when Raynaud's syndrome was first suspected) and November 22,

17   2019, Correctional Defendants wrote up Mr. Battersby for being under his blankets. *See id.* at 10.

18   (Writing up an inmate appears to mean taking some sort of adverse or disciplinary action against

19   him.)

20         On November 22, 2019, Corporal Jackson said that Mr. Battersby did not have a medical

21   exemption for being under blankets or to have an extra blanket. *See id.* Mr. Battersby told

22   Corporal Jackson that he did, in fact, have a medical exemption for an extra blanket. *See id.* Mr.

23   Battersby also explained that he needed to use his medically ordered extra blanket during the day

24   for warmth. *See id.* To demonstrate his need for an extra blanket, Mr. Battersby "showed

25   [Corporal Jackson] [Mr. Battersby's] feet and how they were obviously discolored and otherwise

26   affected by exposure to the cold." SAC, Battersby Decl. at 4. Corporal Jackson wrote up Mr.

27   Battersby for violating a rule prohibiting inmate from being under their blankets during the day.

28   *See* SAC at 10. Mr. Battersby filed grievances. *See id.*

4

United States District Court
Northern District of California

1   Sometime between October 21, 2019 and November 23, 2019, Mr. Battersby informed

2   Corporal Twitchel and Correctional Officer Coleman of Mr. Battersby's medical condition. *See*

3   SAC, Battersby Decl. at 4-5. For a brief time thereafter, Corporal Twitchel and Correctional

4   Officer Coleman allowed Mr. Battersby to remain under the blankets during bed-and-dress time,

5   without punishing him. *See id*.

6   On November 23, 2019, Mr. Battersby filed a "sick call slip" regarding the blanket issue.

7   *See* SAC at 11. On November 24, 2019, Mr. Battersby was given an extra blanket. *See id*. at 14.

8   On November 23, 2019, Mr. Battersby was "written up and locked down" by Corporal

9   Twitchel and "not given tier time" because he was under his blankets. *See* SAC at 11. During his

10  interaction with Corporal Twitchel, Mr. Battersby showed Corporal Twitchel "the effect exposure

11  to cold had on [Mr. Battersby's] feet." SAC, Battersby Decl. at 4. He wrote a grievance against

12  Corporal Twitchel for locking him down and ignoring his medical needs. *See* SAC at 11.

13  On November 24, 2019, Correctional Officer Coleman wrote up Mr. Battersby, shortened

14  his tier time, and gave him an undesirable tier time, for being under blankets during the day. *See*

15  *id.* at 11.

16  On November 25, 2019, Mr. Battersby was seen by Nurse Iver. *See id*. Nurse Iver stated

17  that he "couldn't do a thing about" the Correctional Defendants' failure to allow Mr. Battersby to

18  have an extra blanket, and that Nurse Iver had never been able to give a medical exemption

19  allowing an inmate to remain under the blankets during the day. *See id*. However, he put in a

20  request for Mr. Battersby to see Dr. Ziegler. *See id.*

21  On November 27, 2019, Nurse Edmondson issued an order for Mr. Battersby to have and

22  to use extra blankets. *See id*. at 16. Also on November 27, 2019, Sergeant Camilli spoke to Nurse

23  Edmondson regarding the October 21, 2019 order for Mr. Battersby to be given an extra blanket.

24  *See id*. After this conversation, Sergeant Camilli "sent out a memo to all staff" which stated that

25  Mr. Battersby was to be allowed under the blankets. *See id*. at 14

26  On December 12, 2019, Mr. Battersby reviewed his medical records and saw that they had

27  been altered. Officials refused to give him a copy of the records without a court order. *Id.* at 12.

28  At no time did Dr. Ziegler prescribe medication for Mr. Battersby's Raynaud's syndrome.

1     *See id.* at 16-17.

2     On December 16, 2019, Mr. Battersby was transferred to the California Department of

3 Corrections and Rehabilitation.  There, he was prescribed a beta-blocker that greatly improved his

4 symptoms.  *Id.* at 13.

5     The prayer for relief requests $1.2 million in monetary damages, as well as an injunction to

6 end the bed-and-dress policy at the jail.  *See id*. at 15.

**III.  DISCUSSION**

7

8 A.    <u>Review of Complaint</u>

9     A federal court must engage in a preliminary screening of any case in which a prisoner

10 seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28

11 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any

12 claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek

13 monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b).  *Pro*

14 *se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

15 699 (9th Cir. 1990).

16     To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a

17 right secured by the Constitution or laws of the United States was violated and (2) that the

18 violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

19 U.S. 42, 48 (1988).

20     Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment

21 or the Fourteenth Amendment.  Which of those amendments applies to an inmate's claim depends

22 on whether he was a convicted prisoner or was a pretrial detainee at the relevant time:  a prisoner's

23 claim arises under the Eighth Amendment's Cruel and Unusual Punishments Clause while a

24 pretrial detainee's claim arises under the Fourteenth Amendment's Due Process Clause.  The two

25 amendments have different standards.

26     Deliberate indifference to a *prisoner's* health or safety needs violates the Eighth

27 Amendment when two requirements are met: (1) the deprivation alleged is, objectively,

28 sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's

United States District Court
Northern District of California

1    health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A defendant is deliberately

2    indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that

3    risk by failing to take reasonable steps to abate it.  *Id.* at 837.  The defendant must not only "be

4    aware of facts from which the inference could be drawn that a substantial risk of serious harm

5    exists," but he "must also draw the inference."  *Id.*  If the defendant should have been aware of the

6    risk, but was not, then he has not violated the Eighth Amendment, no matter how severe the risk.

7    *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).  Negligence does not violate

8    the Eighth Amendment.  *See Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004).

9         A *pretrial detainee's* claim arises under the Fourteenth Amendment's Due Process Clause

10   and is governed by an *objective* deliberate-indifference standard rather than the subjective one that

11   applies to a prisoner's claim.

12
13   > [T]he elements of a pretrial detainee's [safety or] medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.
14
15
16
17

18   *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  For the third element, the

19   defendant's conduct must be objectively unreasonable, "a test that will necessarily 'turn[] on the

20   facts and circumstances of each particular case.'"  *Id.* (alteration in original) (quoting *Castro v.*

21   *County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).  "[T]he plaintiff must 'prove more

22   than negligence but less than subjective intent—something akin to reckless disregard."  *Id*.

23   (quoting *Castro*, 833 F.3d at 1071).

24        Mr. Battersby suggests that he was not sentenced until December of 2019.  SAC at 12.  He

25   thus appears to allege that his Fourteenth Amendment rights were violated by Defendants'

26   deliberate indifference.

27        Liberally construed, Mr. Battersby has alleged that the named Defendants were

28   deliberately indifferent to his serious medical needs.  The Court notes that it is unclear from the

7

United States District Court
Northern District of California

1    SAC whether Raynaud's disease puts Mr. Battersby at risk for tissue loss and mild frostbite, or

2    whether Mr. Battersby has already suffered these effects. *See generally*, SAC  Regardless, Mr.

3    Battersby alleges that his feet "hurt" because of the Raynaud's disease, and that he told various

4    Defendants as much. *See* SAC at 5.  Where an untreated medical condition forces an inmate to

5    endure "unnecessary pain," the Ninth Circuit has held that this is sufficient to meet the serious

6    medical needs standard. *See McGuckin v. Smith*, 974 F.2d 1050, 1059-62 (9th Cir. 1992)

7    (addressing an Eighth Amendment claim), *overruled in part on other grounds by WMX Techs.,*

8    *Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

9           Liberally construed, the SAC states a cognizable claim against the named Medical

10   Defendants.  A cognizable claim is stated against Nurse Iver Lien, who allegedly did not treat Mr.

11   Battersby's condition adequately in 2017-2018, delayed sending Mr. Battersby to a doctor, and

12   acceded in 2019 to a correctional staff rule that was contrary to the inmate's medical need (i.e., the

13   rule that did not allow extra blankets for daytime use).  A cognizable claim is stated against Dr.

14   Ziegler, who allegedly failed to take the steps necessary to ensure that Mr. Battersby (a) received

15   the extra blanket and (b) would be permitted to use blankets for warmth during Raynaud's

16   episodes, such as by contacting correctional staff directly after Mr. Battersby alerted Dr. Ziegler to

17   the fact that he was having problems getting and using blankets. *See Jett v. Penner,* 439 F.3d

18   1091, 1097 (9th Cir. 2006) (doctor's failure to provide treatment for administrative reasons would

19   be sufficient to show a genuine issue of material fact as to deliberate indifference).  A cognizable

20   claim also is stated against Dr. Ziegler for his failure to prescribe medication for Mr. Battersby.  A

21   cognizable claim is stated against Nurse Edmondson, who allegedly failed to transmit Dr.

22   Ziegler's medical order to the Correctional Defendants for more than 30 days, thus delaying the

23   implementation of that order.

24          A cognizable claim is not stated against Does 1-4.  At the end of the SAC, Mr. Battersby

25   makes the conclusory allegation that Does 1-4 "had the duty to communicate the foregoing orders

26   by Defendant Ziegler to nurse Edmundson and/or directly to non-medical custody staff and failed

27   to do so." SAC at 17.  However, earlier in the SAC Mr. Battersby specifically stated that Does 1-4

28   *did* convey Dr. Ziegler's orders to Nurse Edmondson, and that it was Nurse Edmondson who

8

1    failed to act. *See* SAC at 15-16. "[A] plaintiff's obligation to provide the 'grounds of his

2    'entitle[ment] to relief' requires more than . . . conclusions . . . ." *Bell Atlantic Corp. v. Twombly*,

3    550 U.S. 544, 553-56, (2007) (citations omitted). Here, the only allegation that Does 1-4 wronged

4    Mr. Battersby is a conclusory statement which the Court need not accept, *see id.*, and even that

5    conclusory statement is directly contradicted by Mr. Battersby's more specific allegations, *see*

6    SAC at 15-16. Because Mr. Battersby has provided no facts to show that he was wronged by

7    Does 1-4, and because his specifically alleges that they performed their duties correctly, Does 1-4

8    are **DISMISSED** from this action.

9           Liberally construed, the SAC states a cognizable claim against the Correctional

10    Defendants. A cognizable claim is stated against Corporal Jackson, Corporal Twitchel, Corporal

11    Freese, and C.O. Coleman, who allegedly took disciplinary measures against Mr. Battersby rather

12    than allow him (a) to use his medically ordered extra blanket and (b) to be under blankets during

13    the day to address his Raynaud's episodes. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th

14    Cir. 1999) (allegation that correctional officer ignored the instructions of a treating physician to

15    provide medication to prisoner is sufficient to state a claim for deliberate indifference). A

16    cognizable claim is stated against Captain Christian, who allegedly made the bed-and-dress rule

17    that precluded Mr. Battersby from being under blankets during the day that were needed to address

18    his Raynaud's episodes.

19           Mr. Battersby requests an injunction against the bed-and-dress rule at the jail as well as

20    damages. When an inmate is released from jail or prison or transferred to another facility and

21    there is no reasonable expectation nor demonstrated probability that he will again be subjected to

22    the conditions from which he seeks injunctive relief, the claims for injunctive should be dismissed

23    as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). Having been sent to prison to

24    serve his sentence, there is no reasonable expectation or demonstrated probability that Mr.

25    Battersby will again spend time in the Humboldt County Correctional Facility where the

26    challenged rule exists. Although he urges that he wants an injunction in the event he is returned to

27    Humboldt County Correctional Facility, SAC at 15, Mr. Battersby has not shown that this is

28    likely. Therefore, the request for an injunction is dismissed because that issue became moot upon

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    Mr. Battersby's transfer to the state prison system.  Only the claims for damages may be pursued.

2    B.    Plaintiff's Discovery-Related Motions

3    In his first discovery-related motion, Mr. Battersby represents that Defendants have

4    produced body camera footage to him in disc format.  *See* Docket No 65.  However, he lacks a

5    device which can play this footage, and PBSP refuses to allow him access to a disc player without

6    a court order.  Mr. Battersby asks the Court to provide such an order.  *See id*.  Mr. Battersby's

7    request is **GRANTED**.  The Court hereby orders PBSP to provide Mr. Battersby access to a disc

8    player so that he may review body camera footage.

9    In his second discovery-related motion, Mr. Battersby moves to compel production of

10   "documents regarding complaints and administrative appeals of indifference to inmates' medical

11   needs, application of the 'Bed and Dress Rule' and documents regarding exemption from compliance

12   with the 'Bed and Dress Rule.'"   Docket No. 76 at 1 (summarizing Mr. Battersby's motion to

13   compel).  Defendants object that Mr. Battersby's requests are overbroad; note the general impropriety

14   of allowing one inmate access to another's records, particularly as inmates may retaliate against one

15   another for perceived favorable treatment; and argue that, because Mr. Battersby's document requests

16   seek disclosure of other inmates' medical records, they would invade third parties' privacy.  *See*

17   *generally, id*.  The Court agrees.  Mr. Battersby contends that these documents are necessary to

18   establish that Defendants have a pattern of ignoring inmates' medical needs in favor of the Bed and

19   Dress Rule, *see* Docket No. 75, but Mr. Battersby does not need to establish a pattern of behavior in

20   order to demonstrate that Defendants were deliberate indifferent to Mr. Battersby's needs.  *See*

21   *Gordon*, 888 F.3d at 1125 (noting that the inquiry "will necessarily 'turn[] on the facts and

22   circumstances of each particular case'").  The burden upon Defendants to produce these documents,

23   and upon third parties whose privacy may be invaded, thus outweighs Mr. Battersby's need for the

24   documents, and Mr. Battersby's first discovery motion is **DENIED**.

25   In his third discovery-related motion, Mr. Battersby asks the Court for leave to subpoena "the

26   names and addresses (for those no longer employed at HCCF) of all of the nurses (RN and LVN)

27   on duty at HCCF from October 2 until October 18, 2019, on October 21, 2019, and November 7,

28   2019," and the hours Dr. Ziegler worked on those dates, so that he may identify Does 1-4 and

1    serve them.  Docket No. 73 at 1.  As noted above, Mr. Battersby alleges that Does 1-4 performed

2    their duties and his claims against them have been dismissed.  Mr. Battersby thus does not need to

3    serve Does 1-4, and his second discovery motion is **DENIED**.

4           In his fourth discovery-related motion, Mr. Battersby asks the Court to provide two blank

5    subpoena forms.  Docket No 74.  A review of the docket for this action reveals that the Clerk

6    already has sent blank subpoena forms to Mr. Battersby.  *See* Docket Entry of June 20, 2022.  Mr.

7    Battersby's third discovery-related motion thus is **DENIED** as unnecessary.

8           Mr. Battersby does not make any request of the Court in his fifth discovery-related motion.

9    Rather, he provides a copy of a request for documents that he sent to Defendants in September of

10   2021, and Defendants' responses thereto.  *See* Docket No. 78.  To the extent Mr. Battersby intended to

11   file a motion to compel, such a motion is **DENIED** because it appears that Defendants have responded

12   to Mr. Battersby, and there is nothing to compel.

### IV.     CONCLUSION

14          1.     Mr. Battersby's first discovery-related motion is **GRANTED**.  The Court orders

15   PBSP to provide Mr. Battersby with the means to review the disc containing body camera footage.

16   Mr. Battersby's second, third, fourth, and fifth discovery-related motions are **DENIED** for the

17   reasons given above.

18          2.     The SAC, liberally construed, states a cognizable claim for monetary damages

19   against Correctional Defendants and the named Medical Defendants under the Fourteenth

20   Amendment for deliberate indifference to medical needs.  The unnamed Medical Defendants,

21   Does 1-4, are dismissed from this action.

22          3.     All named Defendants have been served and have appeared in this action.  *See*

23   Docket Nos. 14-18, 24-25, 67-68.  Service thus has been effected upon Defendants.  *See* N.D. Cal.

24   Civ. L. R. 5-1(g).

25          4.     In order to expedite the resolution of this case, the following briefing schedule for

26   dispositive motions is set:

27                 a.     No later than **December 2, 2022**, Defendants must file and serve a motion

28   for summary judgment or other dispositive motion.  If Defendants are of the opinion that this case

*United States District Court*
*Northern District of California*

11

United States District Court
Northern District of California

1    cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date

2    the motion is due.  If Defendants file a motion for summary judgment, Defendants must provide to

3    Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a

4    motion.  *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

5                b.        Plaintiff's opposition to the summary judgment or other dispositive motion

6    must be filed with the Court and served upon Defendants no later than **January 6, 2023**.

7                c.        Defendants **shall** file a reply brief no later than **January 20, 2023**.

8         5.        All communications by Plaintiff with the Court must be served on defense counsel

9    by mailing a true copy of the document to the appropriate Defendant's counsel.  The Court may

10   disregard any document which a party files but fails to send a copy of to his opponent.  Once a

11   defendant is represented by counsel, all documents must be mailed to counsel rather than directly

12   to the party.

13        6.        Discovery may be taken in accordance with the Federal Rules of Civil Procedure.

14   **No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is**

15   **required before the parties may conduct discovery**.

16        7.        Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the

17   Court informed of any change of address and must comply with the Court's orders in a timely

18   fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant

19   to Federal Rule of Civil Procedure 41(b).

20        8.        Plaintiff is cautioned that he must include the case name and case number for this

21   case on any document he submits to the Court for consideration in this case.

22        This order disposes of Docket Nos. 65, 66, 72, 73, 74, and 78.

23

24        **IT IS SO ORDERED**.

25

26   Dated: September 30, 2022

27   _____

28        EDWARD M. CHEN
          United States District Judge

12