UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK ALLEN BATTERSBY,<br><br>    Plaintiff,<br><br>    v.<br><br>IVRA LIEH, et al.,<br><br>    Defendants. | Case No. 20-cv-06561-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND; SCREENING THIRD AMENDED COMPLAINT; AND ADDRESSING PLAINTIFF'S DISCOVERY-RELATED MOTIONS**<br><br>Docket Nos. 80-81, 84-87 |

## I.    INTRODUCTION

Erick Battersby, currently an inmate at Pelican Bay State Prison in Crescent City, California, filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about events and omissions at a jail at which he earlier was housed. Docket No. 1. The Court screened the initial complaint pursuant to 28 U.S.C. § 1915 and § 1915A, dismissed Defendant Nurse Edmundson from the action, and ordered all other Defendants to respond to Mr. Battersby's claims. Docket No. 8. Mr. Battersby subsequently filed an amended complaint ("FAC"), which included new allegations against Nurse Edmondson. Docket No. 31. The Court screened the FAC, and ordered Nurse Edmondson to respond to Mr. Battersby's claims. Docket No. 62.

Mr. Battersby then moved for leave to file a second amended complaint ("SAC"), explaining that he intended to file it in place of the FAC. Docket No. 66. The Court granted Mr. Battersby's motion, screened the SAC and ordered Defendants to respond to Mr. Battersby's claims, and addressed several discovery motions. *See* Docket No. 79.

Shortly thereafter Mr. Battersby moved to file a third amended complaint ("TAC"). *See* Docket No 81. The Court vacated the briefing schedule on the SAC, and ordered Defendants to

1  respond to Mr. Battersby's motion to file a TAC.  *See* Docket No. 83.  Defendants filed no

2  opposition to Mr. Battersby's TAC.  *See generally* Docket.

3   Before trial, courts are encouraged to "freely give leave" to amend.  *See* Fed. R. Civ. P.

4  15(a)(2).  Defendants have not yet filed a dispositive motion against the TAC, and appear unlikely

5  to be prejudiced by its amendment.  *See generally*, Docket.  Accordingly, the Court **GRANTS** Mr.

6  Battersby's motion to file a TAC, and screens the TAC below.[1]  The Court notes that the TAC

7  adds another Defendant who must be served, and so a briefing schedule cannot be established at

8  this time.

9   Mr. Battersby also has filed multiple motions related to discovery.  Docket Nos. 80, 84-87.

10  Mr. Battersby's discovery-related motions will be addressed below.

11  **II.     BACKGROUND**

12   Mr. Battersby currently is imprisoned at Pelican Bay State Prison.  *See* TAC at 1.  Before

13  his conviction, he was detained at Humboldt County Correctional Facility ("HCCF"), from about

14  October 2017 through about December 2019.  *See generally, id*.

15   Mr. Battersby complains that, while housed at HCCF, he developed Raynaud's syndrome.

16  He explains that Raynaud's syndrome is an intense "overreaction to cold," and can result in "tissue

17  loss and frostbite."  TAC, Ex. A at 1.  Because of this condition, Mr. Battersby needs extra

18  blankets to keep warm.  *See id*.  He complains that various members of the jail's medical and

19  custodial staff interfered with his use of extra blankets, specifically not allowing him to have an

20  extra medical blanket and disciplining him for violating the jail captain's Bed-and-Dress rule

21  when he stayed under blankets during the day.  *See id*.  Mr. Battersby eventually was allowed to

22  have an extra medical blanket and to be under blankets during the day.

23   Mr. Battersby names the following Defendants: Nurse Iver Lien, Nurse Edmondson,

24  Doctor Ziegler, and Nurse Santuccio ("Medical Defendants"); and Captain Christian, Corporal

25  Jackson, Corporal Twitchel, Corporal Freese, and Correctional Officer Coleman ("Correctional

26  Defendants").  TAC at 3.  All Defendants are employed at the Humboldt County Correctional Facility.

27

28  [1] Although the Court grants Mr. Battersby's motion to amend his pleading, the Court cautions Mr. Battersby that repeated amendments delay the progress of this case.

*See id.*

The TAC alleges the following:

Mr. Battersby put in a sick-call slip on October 13, 2017 (and another before January 3, 2018, when he was not seen for the first one) for care for a "rash and dull pain in [his] feet like [his] feet were stuck in a bucket of ice." TAC, Ex. B at 8. He was seen by Nurse Iver[2] on January 3, 2018. *See id*. Mr. Battersby informed Nurse Iver that his feet "hurt." *Id*. Nurse Iver said that Mr. Battersby's feet were fine, and the rash had something to do with circulation. *See id*.

Mr. Battersby put in another sick-call slip on August 6, 2019, stating the "issue with [his] feet [was] getting worse." *Id.* Nurse Iver saw him three days later, and said it was probably nothing but that he (Iver) would put in a referral to see the doctor. *See id*. Mr. Battersby reminded Nurse Iver that his feet were still hurting on September 1, and submitted a sick-call slip on September 30 because he still had not seen the doctor. *See id*.

Dr. Ziegler saw Mr. Battersby on October 2, 2019. *See id*. at 8-9. Dr. Ziegler's preliminary assessment was that Mr. Battersby had Raynaud's syndrome. *See id*. at 9. Dr. Ziegler ordered blood work to confirm his preliminary assessment. *See id*.

Sometime between October 2 and October 18, 2019, Mr. Battersby asked Dr. Ziegler for an order that Mr. Battersby be allowed an extra blanket. *See id*. at 15. Dr. Ziegler "verbally requested" that Does 1-4 generate such an order, and Does 1-4 "did so by conveying" Dr. Ziegler's request to Nurse Edmondson. *Id*. The order should have been completed by Nurse Edmondson, but was not. *See id*.

On October 18, 2019, Mr. Battersby had a follow-up appointment with Dr. Ziegler. *See id*. at 9. Dr. Ziegler confirmed in that appointment that the problem was Raynaud's syndrome.[3] *See*

---

[2] The Court means no disrespect by referring to Nurse Lien by his first name, when all other Defendants are referred to by their last names. Rather, Mr. Battersby used Nurse Lien's first name throughout the TAC, and this order follows the convention used by Mr. Battersby.

[3] For context only, the Court notes that Raynaud's disease is "a vascular disorder that is marked by recurrent spasm of the capillaries and especially those of the fingers and toes upon exposure to cold, that is characterized by pallor, cyanosis, and redness in succession usually accompanied by pain, and that in severe cases progresses to local gangrene." *See* Raynaud's disease, *Merriam-Webster.com Medical Dictionary*, Merriam-Webster, https://www.merriam-webster.com/medical/Raynaud%27s%20disease (last visited Dec. 30, 2021). *See also Cox v. Allin Corp. Plan*,

United States District Court
Northern District of California

1  *id*. Mr. Battersby and Dr. Ziegler "discussed how [Mr. Battersby] would need to use an extra

2  blanket to combat a[] [Raynaud's] episode whenever it might occur." *Id*. Nurse Iver overheard

3  the discussion, and said that Mr. Battersby could not use an extra blanket during the day but could

4  have an extra sweatshirt. *See id*. Dr. Ziegler stated that, when an episode struck, Mr. Battersby

5  would need to be able to keep his entire body warm because a Raynaud's episode can result in

6  "tissue loss or mild frostbite." *See id*. Dr. Ziegler said "he'd talk to custody and hopefully come

7  to some kind of solution." *Id*. Dr. Ziegler asked Does 1 and 2 to generate an order for an extra

8  blanket, and they "conveyed the order request to [Nurse] Edmondson who failed to ensure

9  communication of the order to non-medical custody staff." *Id.* at 15.

10  On October 21, 2019, "Dr. Ziegler made a medical treatment order for an extra blanket to

11  combat a Raynaud's episode." *Id*. at 9. In part of the TAC, Mr. Battersby alleges that Dr. Ziegler

12  left this order "in Karen's box," *id*., and that "Nurse Karen Edmondson failed to act on this

13  information for . . . over 30 days," *id*. at 10, 15. However, in a later part of the TAC, Mr.

14  Battersby alleges that Nurse Santuccio generated the treatment order for Dr. Ziegler, but Nurse

15  Santuccio neither conveyed the order to Nurse Edmondson nor disseminated it to custody staff.

16  *See id*. at 17.

17  At a November 6, 2019 or November 11, 2019 visit, Mr. Battersby told Dr. Ziegler he had

18  not received his extra blanket but was using a prayer blanket for warmth. *See* TAC, Ex. F at 2

19  (stating this occurred on November 11), TAC, Ex. B at 10 (stating this occurred on November 6).

20  Dr. Ziegler wrote a confusing order for Mr. Battersby always to be allowed his blanket. *See id*. at

21  16. Does 1-4 conveyed this order to Nurse Edmondson, and Dr. Ziegler relied on Nurse

22  Edmondson to convey this order to custodial staff, but she did not. *See id*.

23  Between October 21, 2019 and November 22, 2019, Mr. Battersby made multiple requests

24  to Correctional Defendants for an extra blanket, none of which were granted. *See id*. at 10, 13.

25  Between October 2, 2019 (when Raynaud's syndrome was first suspected) and November 22,

26  2019, Correctional Defendants wrote up Mr. Battersby for being under his blankets. *See id*. at 10.

27

28  70 F. Supp. 3d 1040, 1044 n.2 (N.D. Cal. 2014) ("The Court may take judicial notice of medical dictionary definitions.") (citation omitted).

4

1  (Writing up an inmate appears to mean taking some sort of adverse or disciplinary action against
2  him.)
3          On November 22, 2019, Corporal Jackson said that Mr. Battersby did not have a medical
4  exemption for being under blankets or to have an extra blanket. *See id*. Mr. Battersby told
5  Corporal Jackson that he did, in fact, have a medical exemption for an extra blanket. *See id.* Mr.
6  Battersby also explained that he needed to use his medically ordered extra blanket during the day
7  for warmth. *See id*. To demonstrate his need for an extra blanket, Mr. Battersby "showed
8  [Corporal Jackson] [Mr. Battersby's] feet and how they were obviously discolored and otherwise
9  affected by exposure to the cold." TAC, Ex. F at 4. Corporal Jackson wrote up Mr. Battersby for
10 violating a rule prohibiting inmate from being under their blankets during the day. *See* TAC, Ex.
11 B at 10. Mr. Battersby filed grievances. *See id.*
12         Sometime between October 21, 2019 and November 23, 2019, Mr. Battersby informed
13 Corporal Twitchel and Correctional Officer Coleman of Mr. Battersby's medical condition. *See*
14 TAC, Ex. F at 4-5. For a brief time thereafter, Corporal Twitchel and Correctional Officer
15 Coleman allowed Mr. Battersby to remain under the blankets during bed-and-dress time, without
16 punishing him. *See id*.
17         On November 23, 2019, Mr. Battersby filed a "sick call slip" regarding the blanket issue.
18 *See* TAC, Ex. B at 10. On November 24, 2019, Mr. Battersby was given an extra blanket. *See id*.
19 at 14.
20         On November 23, 2019, Mr. Battersby was "written up and locked down" by Corporal
21 Twitchel and "not given tier time" because he was under his blankets. *See id*. at 11. During his
22 interaction with Corporal Twitchel, Mr. Battersby showed Corporal Twitchel "the effect exposure
23 to cold had on [Mr. Battersby's] feet." TAC, Ex. F at 4. He wrote a grievance against Corporal
24 Twitchel for locking him down and ignoring his medical needs. *See* TAC, Ex. B at 11.
25         On November 24, 2019, Correctional Officer Coleman wrote up Mr. Battersby, shortened
26 his tier time, and gave him an undesirable tier time, for being under blankets during the day. *See*
27 *id.* at 11.
28         On November 25, 2019, Mr. Battersby was seen by Nurse Iver. *See id*. Nurse Iver stated

United States District Court
Northern District of California

1  that he "couldn't do a thing about" the Correctional Defendants' failure to allow Mr. Battersby to
2  have an extra blanket, and that Nurse Iver had never been able to give a medical exemption
3  allowing an inmate to remain under the blankets during the day. *See id*. However, he put in a
4  request for Mr. Battersby to see Dr. Ziegler. *See id.*

5  On November 27, 2019, Nurse Edmondson issued an order for Mr. Battersby to have and
6  to use extra blankets. *See id*. at 11. Also on November 27, 2019, Sergeant Camilli spoke to Nurse
7  Edmondson regarding the October 21, 2019 order for Mr. Battersby to be given an extra blanket.
8  *See id*. After this conversation, Sergeant Camilli "sent out a memo to all staff" which stated that
9  Mr. Battersby was to be allowed under the blankets. *See id*.

10  On December 12, 2019, Mr. Battersby reviewed his medical records and saw that they had
11  been altered. Officials refused to give him a copy of the records without a court order. *Id.* at 12.

12  At no time did Dr. Ziegler prescribe medication for Mr. Battersby's Raynaud's syndrome.
13  *See id*. at 16-17.

14  On December 16, 2019, Mr. Battersby was transferred to the California Department of
15  Corrections and Rehabilitation. There, he was prescribed a beta-blocker that greatly improved his
16  symptoms. *Id.* at 12.

17  The prayer for relief requests $1.2 million in monetary damages, as well as an injunction to
18  end the bed-and-dress policy at the jail. *See* TAC, Ex. C at 19.

19  **III.    DISCUSSION**

20  A.    Review of Complaint

21  A federal court must engage in a preliminary screening of any case in which a prisoner
22  seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28
23  U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any
24  claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek
25  monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro*
26  *se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,
27  699 (9th Cir. 1990).

28  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a

6

1 right secured by the Constitution or laws of the United States was violated and (2) that the
2 violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487
3 U.S. 42, 48 (1988).

4 Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment
5 or the Fourteenth Amendment. Which of those amendments applies to an inmate's claim depends
6 on whether he was a convicted prisoner or was a pretrial detainee at the relevant time: a prisoner's
7 claim arises under the Eighth Amendment's Cruel and Unusual Punishments Clause while a
8 pretrial detainee's claim arises under the Fourteenth Amendment's Due Process Clause. The two
9 amendments have different standards.

10 Deliberate indifference to a *prisoner's* health or safety needs violates the Eighth
11 Amendment when two requirements are met: (1) the deprivation alleged is, objectively,
12 sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's
13 health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A defendant is deliberately
14 indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that
15 risk by failing to take reasonable steps to abate it. *Id.* at 837. The defendant must not only "be
16 aware of facts from which the inference could be drawn that a substantial risk of serious harm
17 exists," but he "must also draw the inference." *Id.* If the defendant should have been aware of the
18 risk, but was not, then he has not violated the Eighth Amendment, no matter how severe the risk.
19 *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Negligence does not violate
20 the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004).

21 A *pretrial detainee's* claim arises under the Fourteenth Amendment's Due Process Clause
22 and is governed by an *objective* deliberate-indifference standard rather than the subjective one that
23 applies to a prisoner's claim.

> [T]he elements of a pretrial detainee's [safety or] medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's

7

1         conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). For the third element, the defendant's conduct must be objectively unreasonable, "a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Id.* (alteration in original) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). "[T]he plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071).

        Mr. Battersby suggests that he was not sentenced until December of 2019. TAC at 12. He thus appears to allege that his Fourteenth Amendment rights were violated by Defendants' deliberate indifference.

        Liberally construed, Mr. Battersby has alleged that the named Defendants were deliberately indifferent to his serious medical needs. The Court notes that it is unclear from the TAC whether Raynaud's disease puts Mr. Battersby at risk for tissue loss and mild frostbite, or whether Mr. Battersby has already suffered these effects. *See generally*, TAC  Regardless, Mr. Battersby alleges that his feet "hurt" because of the Raynaud's disease, and that he told various Defendants as much. *See* TAC at 5. Where an untreated medical condition forces an inmate to endure "unnecessary pain," the Ninth Circuit has held that this is sufficient to meet the serious medical needs standard. *See McGuckin v. Smith*, 974 F.2d 1050, 1059-62 (9th Cir. 1992) (addressing an Eighth Amendment claim), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

        Liberally construed, the TAC states a cognizable claim against the named Medical Defendants. A cognizable claim is stated against Nurse Iver Lien, who allegedly did not treat Mr. Battersby's condition adequately in 2017-2018, delayed sending Mr. Battersby to a doctor, and acceded in 2019 to a correctional staff rule that was contrary to the inmate's medical need (i.e., the rule that did not allow extra blankets for daytime use). A cognizable claim is stated against Dr. Ziegler, who allegedly failed to take the steps necessary to ensure that Mr. Battersby (a) received the extra blanket and (b) would be permitted to use blankets for warmth during Raynaud's episodes, such as by contacting correctional staff directly after Mr. Battersby alerted Dr. Ziegler to

the fact that he was having problems getting and using blankets. *See Jett v. Penner,* 439 F.3d 1091, 1097 (9th Cir. 2006) (doctor's failure to provide treatment for administrative reasons would be sufficient to show a genuine issue of material fact as to deliberate indifference). A cognizable claim also is stated against Dr. Ziegler for his failure to prescribe medication for Mr. Battersby. A cognizable claim is stated against Nurses Edmondson and Santuccio, who allegedly failed to transmit Dr. Ziegler's medical order on several occasions, thus delaying the implementation of that order.

Liberally construed, the TAC states a cognizable claim against the Correctional Defendants. A cognizable claim is stated against Corporal Jackson, Corporal Twitchel, Corporal Freese, and C.O. Coleman, who allegedly took disciplinary measures against Mr. Battersby rather than allow him (a) to use his medically ordered extra blanket and (b) to be under blankets during the day to address his Raynaud's episodes. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) (allegation that correctional officer ignored the instructions of a treating physician to provide medication to prisoner is sufficient to state a claim for deliberate indifference). A cognizable claim is stated against Captain Christian, who allegedly made the bed-and-dress rule that precluded Mr. Battersby from being under blankets during the day that were needed to address his Raynaud's episodes.

Mr. Battersby requests an injunction against the bed-and-dress rule at the jail as well as damages. When an inmate is released from jail or prison or transferred to another facility and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the conditions from which he seeks injunctive relief, the claims for injunctive should be dismissed as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). Having been sent to prison to serve his sentence, there is no reasonable expectation or demonstrated probability that Mr. Battersby will again spend time in the Humboldt County Correctional Facility where the challenged rule exists. Although he urges that he wants an injunction in the event he is returned to Humboldt County Correctional Facility, TAC at 15, Mr. Battersby has not shown that this is likely. Therefore, the request for an injunction is dismissed because that issue became moot upon Mr. Battersby's transfer to the state prison system. Only the claims for damages may be pursued.

B.     Plaintiff's Discovery-Related Motions

Mr. Battersby asked the Court to compel Defendants to produce a portion of a medical manual. *See* Docket Nos. 80, 84. He represented that Defendants have expressed their willingness to produce a copy of the relevant portion of the manual, but have failed to do so despite repeated reminders. *See id*. Defendants have not opposed this motion. *See generally*, Docket. The Court GRANTS this motion to compel.

Mr. Battersby asked for an order compelling Defendants to preserve body camera footage. *See* Docket No. 85. Defendants opposed such an order as unnecessary, because they already have preserved relevant footage. *See* Docket No. 89. Indeed, the Court notes that Defendants previously have produced such footage for Mr. Battersby. *See* Docket Nos. 65, 79. A preservation order thus appears unnecessary, and Mr. Battersby's motion is DENIED.

Mr. Battersby filed a confusing motion to compel, which indicated that materials had been produced but asked the Court to find Defendants' objections were overbroad. *See* Docket No. 86. Defendants opposed Mr. Battersby's motion, explaining that they produced the materials in question, and stated objections to preserve their rights. *See* Docket No. 89. As the materials at issue have been produced, there is nothing to compel and Mr. Battersby's motion is DENIED.

Mr. Battersby filed a discovery request with the Court rather than, or in addition to, sending it to Defendants. *See* Docket No. 87. Defendants have responded to this request. *See* Docket No. 91. Because it appears to have been filed in error, the Clerk shall terminate the motion appearing at Docket Number 87.

**IV.     CONCLUSION**

1.     Mr. Battersby's first discovery-related motion is **GRANTED**. The Court orders Defendants to provide Mr. Battersby with the relevant portion of the medical manual. *See* Docket No. 80. All other discovery-related motions are **DENIED** for the reasons given above.

2.     The TAC, liberally construed, states a cognizable claim for monetary damages against Correctional Defendants and the named Medical Defendants under the Fourteenth Amendment for deliberate indifference to medical needs.

3.     Nurse Iver Lien, Dr. Ziegler, Nurse Edmundson, and the Correctional Defendants

10

were served either with the original complaint or the SAC, and counsel for Defendants has appeared in this action. *See* Docket Nos. 14-18, 24-25, 67-68. Service thus has been effected upon these Defendants. *See* N.D. Cal. Civ. L. R. 5-1(g).

4. The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the FAC, and a copy of all the documents in the case file upon Nurse Samantha Santuccio, who apparently works at the Humboldt County Correctional Facility at 826 Fourth Street, Eureka, CA 95501.

5. After service has been effected upon Nurse Santuccio, the Court will establish a briefing schedule for dispositive motions.

6. All communications by Plaintiff with the Court must be served on defense counsel by mailing a true copy of the document to the appropriate Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery**.

8. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

///
///
///
///
///
///

9. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

This order disposes of Docket Nos. 80, 81, and 84-87.

**IT IS SO ORDERED**.

Dated: September 29, 2023

_____
EDWARD M. CHEN
United States District Judge